WILLIAM B. GIBBS, Respondent, *v.* MARSHALL C. LEFFERTS and T. CHESLEY RICHARDSON, as Executors, etc., of PETER C. BAKER, Deceased, Appellants.

Second Department, October 28, 1921.

Executors and administrators — action against executors to recover commissions on sale of real estate — variance between pleadings and proof — verdict in favor of plaintiff against weight of evidence — contract not within power of executors to make — when action at law not maintainable against executors — erroneous instruction on weight of evidence.

In an action by a real estate broker against executors to recover commissions on the sale of real property which he claimed to be entitled to under an alleged contract, evidence examined, and *held*, that there was a fatal

variance between plaintiff's pleading and his proof in that the proof did not establish the existence of a contract;

That the verdict of the jury in favor of the plaintiff was against the weight of the evidence.

The contract which the plaintiff claimed he entered into with the defendants, as executors, was beyond the powers of the executors to make and, therefore, was not binding upon the estate.

The plaintiff was not entitled to maintain this action at law against the defendants, as executors, under the proof adduced.

Where the testimony of a disinterested witness tended to establish an admission by the plaintiff that the sale was not effected by him and that he was not entitled to any commission, it was error for the court to charge the jury in effect that as to whether or not the agreement was made depended entirely upon the testimony of the plaintiff and the executor with whom the alleged contract was made, and that said disinterested witness, the only other witness in the case, knew nothing at all about the making of the agreement.

APPEAL by the defendants, Marshall C. Lefferts and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Queens on the 21st day of May, 1921, upon the verdict of a jury, and also from an order entered in said clerk's office on the 19th day of May, 1921, denying defendants' motion for a new trial made upon the minutes.

*Joseph Larocque,* for the appellants.

*William E. Kennedy* [*Adolph Herzog* with him on the brief], for the respondent.

MANNING, J.:

The action was brought to recover a certain commission which the plaintiff claimed was due to him from the defendants, whom he sued in their capacity as executors of the last will and testament of Peter C. Baker, deceased.

The allegations of the complaint material to the controversy are as follows:

" *Third.* That the defendants, the said Marshall C. Lefferts and T. Chesley Richardson, the executors aforesaid, on or about the 1st day of January, 1919, employed the plaintiff, who was a real estate broker, to sell the said premises for the said defendants, Marshall C. Lefferts and T. Chesley Richardson, that in pursuance of said employment, the said

William B. Gibbs, at their special instance and request sold said premises to the Dickel Construction Company, a domestic corporation, for the sum of Fifty thousand ($50,000.00) dollars.

" *Fourth.* That the said Marshall C. Lefferts and T. Chesley Richardson promised to pay the said William B. Gibbs, the sum of Twenty-five hundred ($2,500.00) dollars, being five (5%) percent of the purchase price, the usual commission, as compensation for his services in procuring a purchaser for said premises and effecting a sale thereof upon the terms fixed by the said Marshall C. Lefferts and T. Chesley Richardson, that the said William B. Gibbs did procure a purchaser and did effect a sale thereof on or about the 30th day of April, 1919, to the said Dickel Construction Company, of No. 73 Dennington Avenue, Woodhaven, New York, upon the terms fixed by said Marshall C. Lefferts and T. Chesley Richardson."

Upon the trial the plaintiff offered no proof tending to establish the making of the contract sued upon; but, on the contrary, such testimony as he did give had reference to a telephonic conversation that he claimed to have held with one of the executors, Marshall C. Lefferts, in February, 1917. An examination of the testimony shows that the plaintiff was not the procuring cause of the sale, and did nothing as a matter of fact to earn the commission on the sale. It is quite apparent that the conversations testified to in no way tended to prove or establish the contract alleged in his complaint. They do not agree therewith in point of time nor in the other essentials necessary to the making of a valid contract as pleaded.

The land, the sale of which gives rise to this controversy, was formerly owned by one Peter C. Baker, who died seized thereof in 1889. It consisted of three separate parcels.

Under the will of Baker, the lands passed to his three daughters, one of whom was the wife of the defendant Lefferts, and another the wife of the defendant Richardson. There never has been any judicial accounting of the estate, but there was, however, an amicable settlement between the heirs, and receipts were given to the executors. At the time of the so-called settlement of the estate the real property still remained unsold, and Lefferts managed it under a power of

attorney from the owners. His testimony is that no part of the estate had been in the executors' hands for quite a time; and that prior to 1919, he, Lefferts, was simply acting as the owners' representative, and at their request.

During the year 1915, down to and including 1919, a concern known as the Dickel Construction Company, of which one George C. Dickel was the president, was engaged in the Jamaica, L. I., section, where this property is located, in developing vacant lands, building houses thereon and selling the same. Early in 1915 this Mr. Dickel was spoken to by the plaintiff, who was a real estate broker having an office in the vicinity, with reference to the purchase of one of these parcels of land. The plot called to Dickel's attention, however, did not suit him at the time, but he suggested that he might be interested in the adjoining parcel; and thereafter negotiations were had which resulted in the purchase by Dickel of the adjoining parcel bounded by Maple, Hillside and Shelton avenues. There is no dispute concerning the plaintiff's brokerage on this sale. Mr. Lefferts agreed, on behalf of the owners, to pay the plaintiff a commission of five per cent on the purchase price, which was $45,000; $600 of this was paid to him at the time of the signing of the contract, and at the time of the delivery of the deed, the balance, $1,650, was paid to him by Lefferts and receipts taken for both payments.

After this transaction had been closed, it appears that the plaintiff, Gibbs, called Dickel's attention to the plot in question on the north side of Hillside avenue, known as plot No. 2, with the result that Dickel told Gibbs that if he could get it for $42,000 he would consider buying it. This was in June, 1915, and Dickel says that this was the last communication he had with the plaintiff respecting the sale of the property.

Practically the same version of the sale of parcel No. 2 is given by Lefferts; and both of these persons say that the sale was not effected in any way through the instrumentality of Gibbs.

The subject of the purchase of the second piece of property was taken up by Dickel himself in March, 1919, and at this

time Lefferts wanted $60,000, while Dickel said the most he could offer was $50,000. Dickel's offer was submitted to the owners by Lefferts, and it was accepted. Before accepting this offer, however, Lefferts asked Dickel whether there was any real estate broker in the sale, to which Dickel answered, " Not at all; " and Dickel finally took title to parcel No. 2 on May 1, 1919.

The Dickel Construction Company sent out some circulars describing houses which they had under construction on this very parcel No. 2, and among those whom the circulars were sent to was Gibbs, the plaintiff, who had re-established an office in the vicinity. Gibbs called up Dickel on the telephone, stating that he had received the circular and was going to try to sell some of the houses, and Dickel said, " That is good." Gibbs said, " Why didn't you buy the property through me? " to which Dickel replied, " I didn't know where you have been keeping yourself all these years." Then Gibbs called up Lefferts on the telephone, and the following conversation is stated to have taken place: Mr. Gibbs said, " I see you have sold that other block of ground to Mr. Dickel," and Mr. Lefferts said, " Yes, we have." Mr. Gibbs said, " What did you get for it? " and Mr. Lefferts said, " $50,000." Mr. Gibbs said, " Where is my commission? " and Mr. Lefferts said, " What commission? " Mr. Gibbs said, " Well, I procured Mr. Dickel for the sale of the first property, the first block, and he is my customer and I am entitled to a commission." Mr. Lefferts said, " Well, I do not understand that you are entitled to any commission at all, and I decline to pay you a commission."

The plaintiff based his claim for a commission upon an agreement which he said was made by Mr. Lefferts, and his version of the matter is as follows: " In May, 1915, I called at Mr. Lefferts' office and told Mr. Lefferts that there was no question but that Mr. Dickel was going to purchase the other parcel of property that was owned by the Baker estate. Mr. Lefferts said, ' I don't believe there is myself, because I believe Mr. Dickel will purchase that other parcel of property.' * * * So I called to see Mr. Dickel in reference to that parcel, at 73 Dennington Avenue, Woodhaven, Long Island, and I told Mr. Dickel what Mr. Lefferts had said

in reference to the  *  *  *  other parcel of land. 'Well,' Mr. Dickel said, ' We will make him an offer on that.'   Mr. Dickel made me an offer of $40,000 on that parcel of land to submit to Mr. Lefferts, and which I did.   I called at Mr. Lefferts' office, it was in  June [1915], and I submitted an offer to Mr. Lefferts of $40,000 for the other parcel of land owned by the Baker estate running from Hillside Avenue towards Briarwood Road along Maple.   Mr. Lefferts said,  ' Well, I don't think there is any use in submitting an offer of that kind, because I wouldn't think of submitting it to the estate under $60,000.' So I said,  ' All right, Mr. Lefferts, I think that possibly Mr. Dickel might do a little better, but I do not think he will give $60,000.'   ' Well,' he said, ' I will tell you.'   Mr. Lefferts said to me,  ' In the event that Mr. Dickel buys this property, Mr. Gibbs, there is nothing for you to worry about, as we will pay you the usual commission that we paid you on the other transaction of five per cent., as I am a pretty busy man and I can't be bothered in making appointments and having you over here.'  *  *  *  I said,  ' All right, Mr. Lefferts.'   So I told Mr. Dickel the feeling Mr. Lefferts had in regards to the price of this property.   ' Well,' Mr. Dickel said, ' I think that you can make him an offer, you better make him an offer of $45,000.'   I called Mr. Lefferts on the telephone and made an appointment with him to call at his office, and which I did.  I made him an offer of $45,000, so he told me it was impossible, he wouldn't submit an offer of $45,000 to the estate.   ' Well,' I said, ' I will tell you, Mr. Lefferts, there is no question but Mr. Dickel is going to purchase this property.'   ' Well,' he said, ' in case he does, Mr. Gibbs, at any time, you do not have to worry, I will pay you your usual commission of five per cent. commission, the same as you got on the other sale of the other parcel of land.' "

Plaintiff admitted that after this alleged conversation in June, 1915, he did not see Mr. Lefferts again, and had not seen him up to the time of the trial; but he says that he had a conversation with him over the telephone in February, 1917, almost two years after the first conversation, and that Lefferts again promised him a commission in case of a sale. No time limit was mentioned; nothing said about the terms of sale; nothing was said about whether plaintiff would be

the procuring cause of the sale; simply that Mr. Lefferts over the telephone told plaintiff that if Mr. Dickel should ever buy that piece of property at any time he would pay plaintiff a commission.

The witness Lefferts positively denied the making of any such statement as the one attributed to him by the plaintiff.

The witness Dickel testified that several months after the closing of the title to the first parcel, in April or May, 1915, Gibbs, the plaintiff, had called him up urging him to buy the second piece, parcel No. 2, and Dickel says that he told Gibbs that he might consider purchasing it at $42,000. He says that Gibbs could not get the property for that amount, and that he had no further transactions with him, and did not hear of him until he sent the circular about the houses that he had for sale, and that after that he heard nothing further from him until about June, 1919, a period of nearly four years. This witness says that he bought the property direct from Mr. Lefferts; that no broker was in the transaction, and that no brokerage was paid.

In the light of the foregoing testimony, giving the plaintiff the benefit of the most liberal construction that can be placed thereon, it cannot be argued that he made out a cause of action based upon the contract alleged in the complaint. There was a fatal variance between his pleadings and his proof, and for that reason alone his complaint should have been dismissed. I am also of the opinion that the verdict of the jury rendered in this case is against the weight of evidence in the light of the testimony of both Lefferts and Dickel, Dickel being concededly a disinterested party. It does not seem reasonable or probable that an executor of an estate, and particularly a man of the supposed intelligence of Lefferts, would make such an improvident contract or agreement as the plaintiff attempts to set forth; and even if he did make such contract, I am inclined to the view that it was beyond his powers as an executor, and hence would not be binding upon the estate. The plaintiff's action is against the defendants, as executors. This action he cannot maintain under the proof adduced, and this furnishes another ground for reversal. (See *O'Brien* v. *Jackson,* 167 N. Y. 31.)

There is still one more ground of error assigned here by

the appellants, which I think is also fatal to the judgment, and this has to do with the charge of the learned court, where he said to the jury: " If the evidence is evenly balanced, then the plaintiff cannot recover. The evidence in his behalf must outweigh that in behalf of the defendants. That does not mean the number of witnesses. It means that the evidence must outweigh. This plaintiff's story must weigh more with you than the story of Mr. Lefferts, because, gentlemen, as to this important point in the case, the important question as to whether or not this agreement was made hinges entirely upon the evidence of Mr. Lefferts and Mr. Gibbs. Mr. Dickel, the only other witness in the case, knows nothing at all about that."

The appellants point out that the charge of the learned court in this respect was erroneous, and that the testimony of Dickel, if true, tended to establish an admission by the plaintiff that the sale was not effected by him, and that he was not entitled to any commission. This and other evidence in the case bearing strongly upon the probabilities was entirely taken away from the jury's consideration by the court's charge. I am inclined to think that the criticism of the appellants as to this portion of the learned court's charge is entirely correct, and that this error furnishes an additional reason why a reversal should be had here.

Defendants' exceptions to the denial of their motion to dismiss the complaint and to direct a verdict for the defendants are set forth in the record, and if I am correct in the reasons hereinbefore set forth, the denial of these motions was error. Hence the judgment rendered herein, and the order denying the motion for a new trial, should be reversed, the complaint of the plaintiff dismissed, with costs, and judgment absolute ordered against the plaintiff.

BLACKMAR, P. J., MILLS, PUTNAM and KELLY, JJ., concur.

Judgment and order reversed, complaint dismissed, with costs, and judgment absolute ordered against the plaintiff.